## Ross Appeal.

Argued October 3, 1950. Before DREW, C. J., STERN, STEARNE, JONES, LADNER and CHIDSEY, JJ.

reargument refused December 7, 1950.

*R. W. Maxwell,* with him *Waychoff, Maxwell & Waychoff,* for appellant.

*Ewing B. Pollock,* with him *Lloyd E. Pollock* and *Pollock & Pollock,* for appellee.

OPINION BY MR. JUSTICE LADNER, November 13, 1950:

This is an appeal from the order of the Court of Common Pleas of Greene County making absolute a rule to show cause why exceptions to confirmation of a deed to property sold at tax sale should not be stricken off because filed too late. The facts are not in dispute.

The appellant, Bernice Scott Ross, was the owner of a house and lot in Gray Township, stated at the argument to be fairly worth $3,500. It was sold July 11, 1949, for $50. at a tax sale for delinquent taxes due for years 1943 and 1944, amounting in all to $29.12. The appellant had acquired this property from the preceding owner, N. C. Park, by deed dated October 16, 1946, duly recorded. Through ignorance or neglect, a proper search for taxes was not made and the purchaser did not know of the tax delinquency for the years of 1943 and 1944, possibly assuming that because the taxes for 1945 and 1946 had been paid there was no delinquency. However, it appears the assessment which had been in the name of N. C. Park was changed to the name of Bernice Scott Ross in 1947 and she paid the taxes for that year as well as the years of 1948 and 1949.

The delinquent taxes of 1943 and 1944 were returned to the Tax Claim Bureau set up for Greene County as authorized by the Real Estate Tax Sale

Law of 1947, P.L. 1368, 72 P.S. 5860.101 et seq., which proceeded under that Act. A notice of the delinquent tax was sent by registered mail to N. C. Park, the owner of the property at the time the taxes were assessed, at his address in Burton, West Virginia, June 15, 1948, and return receipt received. Also on June 22, 1949, notice of the proposed sale was sent by registered mail to the same party and receipt received from him. No notice however was sent to Bernice Scott Ross, the actual owner of record of the property who lived there from 1946, and who was the assessed owner since 1947. Nor was any notice delivered to the terre tenant nor posted on the premises. Nor did she know anything about the sale or the proceedings until she filed exceptions.

On September 17, 1949, return of sale was filed in the court, but without awaiting the expiration of the full sixty days allowed by section 607c of the Act for filing exceptions, a decree of absolute confirmation of the sale was entered *November 5, 1949,* i.e., 49 days after the return of the sale. On February 18, 1950, Bernice Scott Ross filed exceptions to the confirmation and prayed the court to permit her to pay the delinquent taxes together with costs involved and set aside the sale.

The court below, feeling bound by the provision of 607g of the Real Estate Tax Sale Law of 1947, 72 P.S. 5860.607, which provides in substance that after the sale has been confirmed absolutely, "the validity of the tax, its return for nonpayment, the entry of the claim, or the making of such claim absolute and the proceedings of the bureau with respect to such sale, or the time of holding the sale, or of petitioning court for an order of sale shall not thereafter be inquired into judicially in equity or by civil proceedings by the person in whose name such property was sold, his or her or theirs, or his, her or their grantees or assigns

or by any lien creditor or other person whatever," reluctantly struck off the exceptions because filed too late. Bernice Scott Ross, the appellant charges this to be error and brings this appeal before us.

Aside from the obvious defect in the entry of the absolute confirmation of sale 11 days *before* the expiration of the 60 days allowed for filing exceptions, the question before us is whether a property owner may have his or her property swept away without being given the notice which the Act requires.

This is the second instance that has come before us at this term in which a property of substantial value has attempted to be taken from the owner for a comparatively trivial amount of taxes and sold for a ridiculously inadequate sum. In the other case, *Hess v. Westerwick*, 366 Pa. 90, 76 A. 2d 745, we held that the legislature could not in one breath require notice and in the next foreclose the right of a property owner even though the notice required by the Act was never given. The guaranties of the bill of rights of our State Constitution, Article I, Sec. 9, and of the due process clause of the Federal Constitution forbid such a travesty of justice.

The question therefore on which this case turns is whether the provisions of the Act of 1947 have been obeyed.

The foundation of the decree confirming the sale is of course the performance by the Tax Claim Bureau of the duty imposed on it by the Act. Sec. 602 of the Act (Act of 1947, P.L. 1368, 72 P.S. 5860.602) in part provides as follows: "In addition to such publications, notice of the sale shall also be given by the bureau, by United States registered mail, return receipt requested, postage prepaid, to each owner at least ten (10) days before the date of sale, addressed to his last known post office address, or if no post office address is known, or if the notice addressed to the owner is not

delivered to the owner by the postal authorities, such notice shall be posted on the property.

"The published notice, the mail notice and the posted notice shall each state that the sale of any property may, at the option of the bureau, be stayed if the owner thereof or any lien creditor of the owner on or before the date of sale enters into an agreement with the Bureau to pay the taxes in instalments, in the manner provided by this act, and the agreement entered into . . . .

"No sale shall be defeated and no title to property sold shall be invalidated because of proof that mail notice as herein required was not received by the owner."

It is to be noted that notice must be given to the *owner*. Now of course it may be conceded that the word owner standing alone may mean either the owner at the time of the sale or owner at the time the taxes were assessed. However, the doubt is cleared up by Sec. 102 of the Act which defines "owner" to mean, "The person in whose name the property is last registered, if registered according to law, and in all other cases means any person in open, peaceable and notorious possession of the property, as apparent owner or owners thereof, or the reputed owner or owners thereof, in the neighborhood of such property."

The learned counsel correctly argued and the learned court below correctly held that the "registered" owner is not the same as an owner whose deed is recorded. Greene County is one of the counties to which existing deed registry laws do not apply, so that the first clause of the section quoted could have no application to property in that County. However, the legislature evidently having in mind that not all the counties were subject to the deed registry laws apparently meant to provide for such counties in the last part of the definition by the language *"and in all other cases*"means any person in

open, peaceable and notorious possession," etc., thus following the time honored precedents of bringing notice home to an owner of real estate by serving the terre tenant, or occupant or by posting the premises, than which there probably is no surer way of bringing home notice to an owner of seated lands.*

Thus we have a case where there being no registered owner within the meaning of the Act, the second definition of owner applied. There is no authorization or direction to notify the owner at the time the taxes were assessed in express language and we cannot infer it in the face of the definition of the word owner in Section 102 above quoted.

Had the occupant of the house and lot been notified, this case would not have been here. Since therefore the notice required by the Act was admittedly *not given,* the sale was basically invalid. The provision that the sale shall not be invalidated because of proof that mail notice was not *received* by the owner does not meet the situation of the case where *no notice was sent.*

The learned court below, because the broad language of Sec. 607 of the Act of 1947 (hereinbefore quoted) was substantially similar to that of Sec. 12 of the Act of 1931, as amended, 72 P.S. 5971 1, felt bound by the construction given the latter act in the case of *Thompson v. Frazier,* 159 Pa. Superior Ct. 395, 48 A. 2d 6 (1946). He therefore held the question of the validity of the tax sale could not be raised after the decree of confirmation had been entered. In the case

---

* For many years it has been customary for the legislature in actions concerning mortgage foreclosures, or actions concerning title or possession of and executions against real estate to insure notice to the real owner by directing service on the occupant or terre tenant or by posting the premises, in addition to service on the defendant: see, e.g. provisions of the Act of July 9, 1901, P.L. 614, Sec. 1, cl. 10, 12 P.S. 309 et seq., and now incorporated in Pa. R. C. P. 1053(a), 1145(a), etc.

of *Hess v. Westerwick,* 366 Pa. 90, 76 A. 2d 745, we had occasion to examine the *Thompson v. Frazier* case and in an opinion filed at this term, said, ". . . but an examination of that case shows the facts therein are wholly different from those of the instant case in that there the owner at the time of the sale was the same owner against whom the taxes were assessed and had due notice of the sale and was at the most complaining of minor irregularities that were not vital. So what the learned Judge (RENO) there said with respect to the invulnerability of the tax title after decree of confirmation based on Section 12 of the Act of 1931, as amended by the Act of 1939, 72 P.S. 5971 1, must be read in conjunction with the earlier statement in the opinion to the effect that the property owner there had full and timely knowledge of all steps taken prior to the sale and could not have been said to have been misled to his harm. To which may be added in view of the owner's knowledge he was bound to act to protect his rights by timely objections or exceptions *before* confirmation. Where, however, the requisite notice of sale required by that act has not been given to the owner in accordance with the act and he is without knowledge until after confirmation, the confirmation cannot cure the fundamental omission because of the 'due process' clauses of our state and federal constitutions."

In the *Westerwick* case we took occasion also to remind the tax collection authorities that "the purpose of tax sales is not to strip the taxpayer of his property but to insure the collection of taxes," and that the very power given by the Act carries with it the responsibility of seeing its conditions are complied with.

It seems difficult to understand why tax collecting agencies seem so prone to ignore ordinary modern common sense business practices. Its own records would seem to disclose whether any returns for delinquent

taxes due for years subsequent to 1944 had been made. Therefore the absence of returns for subsequent taxes should have indicated to the tax claim Bureau that all taxes for the five years subsequent to 1944 had been paid. This then ought to have suggested a delinquency not deliberate but due to some oversight or error. In such circumstances a letter or a telephone call of inquiry to the local collector would speedily have brought forth the important information that the property had changed owners. Then a mere demand on the new owner would no doubt have quickly brought the payment of the $29.12 taxes without resort to court proceedings, or a sale or further expense to the county or taxpayer. Nor do we understand why the local tax collectors after making a return of delinquent taxes for the purpose of lien, calmly forget all about the delinquent taxes and do not follow the sensible practice of reminding the taxpayer, when they send out bills for the current year, of the delinquent taxes still due for the previous year or years.

That the law imposes no such duties on the tax officials is beside the point. Common courtesy demands some recognition of the fact that those who hold public office in this land at least, are still the servants of the people, not their masters. The strict provisions of the Real Estate Tax Sale Law were never meant to punish taxpayers who omitted through oversight or error (from which the best of us are never exempt) to pay their taxes. Tax acts were rather meant to protect the local government against wilful, persistent, long standing delinquents for whom we hold no brief, and to whom the appellate court decisions have consistently given short shrift.

The order of the court making absolute the rule to strike off the exceptions must be reversed, and the exceptions reinstated, to be proceeded on in accordance with this opinion.

Order reversed.