Steven GLADSTONE and Robert Plank, Jr., 50% interest, Greenwood Invest-ment, Inc., 50% interest

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION.

Federal National Mortgage Association,

v.

Tax Claim Bureau of Monroe County, Steven D. Gladstone, Robert E. Plank, Jr., and Greenwood Investments.

Appeal of Federal National Mortgage Association.

Commonwealth Court of Pennsylvania.

Argued Nov. 4, 2002.

Decided March 19, 2003.

Gerard J. Geiger, Stroudsburg, for appellant.

Steven D. Gladstone, Mount Pocono, for appellees.

BEFORE: COLINS, President Judge, COHN, Judge, and MIRARCHI, JR., Senior Judge.

Opinion by Senior Judge MIRARCHI, JR.

The Federal National Mortgage Association (FNMA) appeals from an order of the Court of Common Pleas of Monroe County (trial court) which denied its petition to set aside a tax sale. We reverse.

On May 10, 1996, Julio and Wendy Echeverria purchased a property located at 13 Pleasant Valley Drive, Chestnuthill Township, Brodheadsville, Pennsylvania (property). Mellon Mortgage Company (Mellon) financed the purchase and a mortgage in the amount of $202,500 was recorded setting forth Mellon as a mortgagee. The Echeverrias subsequently defaulted in the payment of their mortgage. On August 3, 1999, Mellon filed a complaint in mortgage foreclosure against the Echeverrias in the United States District Court for the Middle District of Pennsylvania. On September 29, 1999, the federal court entered judgment in favor of Mellon and against the Echeverrias for failure to answer or otherwise respond. On June 22, 2000, FNMA purchased the property at a United States Marshal's sale. On August 2, 2000, the United States Marshal transferred title to FNMA and, on August 16, 2000, the deed was recorded in the Office for the Recorder of Deeds for Monroe County.

The Echeverrias had failed to make payments of real estate taxes on the property for the tax year 1998. The Tax Claim Bureau of Monroe County (Bureau) sent notices to Julio and Wendy Echeverria advising them that their property would be sold at a tax sale. Certified mail receipts for these notices were signed by Julio Echeverria on July 12, 2000 and by Wendy Echeverria on July 5, 2000. The Bureau also published notice of the sale on August 4, 2000 in the Pocono Record and the Monroe County Legal Reporter. The property was also posted on July 24, 2000. All notices identified Julio and Wendy Echeverria as the owners of record of the subject property. On September 22, 2000, Steven Gladstone, Robert E. Plank, Jr. and Greenwood Investments, Incorporated (collectively, Appellees) purchased the property at the tax sale for the sum of $8231.68. By notice dated September 27, 2000, the Bureau notified FNMA that the subject property had been sold at an upset tax sale.

FNMA filed a petition to set aside the tax sale and Appellees filed an action to quiet title. Both parties then filed motions for summary judgment. The trial court found that the Bureau provided the notice of tax sale required by Section 602 of the Real Estate Tax Sale Law (Law).[1] The trial court noted that when the Bureau decided to expose the subject property to an upset tax sale, the owners of record were Julio and Wendy Echeverria and that these individuals remained the owners of record on each occasion that notice of the impending sale was provided. The trial court concluded that the Bureau's duty to inform the owner of record was satisfied once such notice was delivered. The trial court rejected FNMA's contention that the Bureau had an obligation to continually check the recording indices of Monroe County prior to conducting the sale. The trial court then granted Appellees' motion for summary judgment and dismissed FNMA's petition to set aside the tax sale. FNMA now appeals to this Court.

On appeal, FNMA argues that (1) the Bureau failed to comply with the notice requirements of Section 602 of the Law, and (2) the Bureau's sale of the property violated FNMA's constitutional rights. Our scope of review in tax sale cases is limited to a determination of whether the trial court abused its discretion, rendered a decision which lacked supporting evidence, or clearly erred as a matter of law. *Simmons v. Delaware County Tax Claim Bureau*, 796 A.2d 400 (Pa.Cmwlth.2002).

Section 602 of the Law requires the Bureau to provide three separate methods of notice to each owner of a property: publication at least thirty days prior to the sale, notification by certified mail at least thirty days prior to the sale, and posting of the property at least ten days prior to the sale. If any of the three types of notice is defective, the tax sale is void. *Hunter v. Washington County Tax Bureau*, 729 A.2d 142 (Pa.Cmwlth.1999). The Bureau has the burden of proving compliance with all applicable notice provisions. *McElvenny v. Bucks County Tax Claim Bureau*, 804 A.2d 719 (Pa.Cmwlth.2002).

There must be strict compliance with the notice provisions of the Law to guard against the deprivation of property without due process of law. *Difenderfer v. Carbon County Tax Claim Bureau*, 789 A.2d 366 (Pa.Cmwlth.2001). To meet the due process requirements, the taxing authority is required to make a reasonable effort to discover the identity and address of a person whose interests are likely to be

1. Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. § 5860.602.

affected by the tax sale. *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).

In the case before us, FNMA argues that the taxing authorities did not make the reasonable efforts necessary to satisfy due process requirements. FNMA points out that, on April 26, 2000, William D. Belutty, the tax collector for Chestnuthill Township, received the sum of $331.38 in full payment of that year's county and local taxes. According to an affidavit submitted to the trial court, Chase Manhattan Mortgage Corporation (Chase) serviced the mortgage loan to the Echeverrias during the year 2000. The affidavit attests that, on March 31, 2000, Chase disbursed a payment to William D. Belutty for payment of the year 2000 county and township taxes.[2] The affidavit further attests that, on September 14, 2000, Chase disbursed a payment to William D. Belutty in the amount of $3929.80 for the year 2000 school taxes.[3] FNMA argues that the local tax collector did not use common sense business practices when he failed to notify Chase that taxes were not paid in a previous year. FNMA contends that had Belutty notified Chase of the tax delinquency, Chase would have satisfied the delinquency.

In *Povlow Appeal,* 48 Pa.Cmwlth. 435, 410 A.2d 376 (1980), mortgagee that had been paying taxes on a vacant property filed exception to a tax sale of that property. The trial court sustained the exceptions and this Court affirmed the trial court's decision. The Court stated that tax collecting agencies should not ignore common sense business practices in attempting to find persons responsible to pay delinquent taxes, before resorting to delinquent tax sale procedures. The Court concluded that it was "no undue burden on the bureau to have made efforts to garner information from the local tax collector as to whether a commercial mortgagee had been involved in paying taxes on this property for years subsequent to the delinquency." *Id.* at 379.[4]

The Court in *Povlow Appeal* based its reasoning, in part, upon *Clawson Appeal,* 39 Pa.Cmwlth. 492, 395 A.2d 703 (1979), wherein the Court observed that the local tax claim bureau in that case knew that the taxpayers had paid all local taxes for the two years after their tax delinquency because Section 605 of the Law[5] requires

---

**2.** The affidavit states that the payment was in the amount of $531.38. However, the receipt from the tax collector indicates that the amount was $331.38 and FNMA asserts in its brief that the payment was in the amount of $331.38.

**3.** According to a receipt issued by Belutty, this payment was received on September 29, 2000.

**4.** The Court in *Povlow Appeal* also stated that where a tax claim bureau knows that taxes for years after the delinquency have been paid and the subject property is vacant, it would be a common sense business practice that the tax claim bureau inquire of the local tax collector as to whether there is a commercial mortgagee who has been assuming responsibility for taxes on the property. In the case before us, the affidavit of posting, completed by Sherri Spolsky, indicated that the subject property was vacant at the time it was posted. *See* Exhibit F to FNMA's Statement of Undisputed Facts.

**5.** 72 P.S. § 5860.605. Section 605 provides, in pertinent part:

The bureau shall fix as the upset price to be realized at the sale of any property upon a claim absolute, the sum of (a) the tax liens of the Commonwealth, (b) the amount of the claim absolute and interest thereon on which the sale is being held, (c) the amount of any other tax claim or tax judgment due on such property and interest on the judgment to the date of sale, (d) the amount of all accrued taxes including taxes levied for the current year, whether or not returned, a record of which shall be furnished to the bureau by tax collectors, receivers of taxes

the tax claim bureau to include in the upset sale price other unpaid taxes for any period subsequent to the delinquency.

In the case before us, Chase made a payment for county and township taxes for a tax year subsequent to the delinquency. The township tax collector, using common sense business practices, should have advised Chase that, despite that payment, a tax delinquency remained on the property. The township tax collector, in accordance with Section 605 of the Law, was required to furnish to the Bureau a record of the amount of all accrued taxes. This record would have reflected that county and township taxes were paid for the property for a year subsequent to the delinquency. The Bureau, having knowledge that taxes were paid for a subsequent year, should have made an inquiry of the township tax collector to determine whether there was a commercial entity assuming responsibility for taxes on the property. Because the Bureau failed to make this inquiry, we conclude that the Bureau did not use common sense business practices to determine the parties to whom notice should be given. Accordingly, we will reverse the order of the trial court.

Our decision is in keeping with the reasoning of *Ross Appeal,* 366 Pa. 100, 76 A.2d 749 (1950), wherein our Supreme Court stated:

> The strict provisions of the Tax Sales Act were never meant to punish taxpayers who omitted through oversight or error (from which the best of us are never exempt) to pay their taxes. Tax acts were rather meant to protect the local government against willful, persistent, long standing delinquents for whom we hold no brief, and to whom the

and taxing districts, (e) the amount of the municipal claims against the property, and (f) the record costs and costs of sale, including pro rata costs of the publication of

appellate court decisions have consistently given short shrift.

The order of the trial court is reversed.

### ORDER

AND NOW, this 19th day of March, 2003, the order of the Court of Common Pleas of Monroe County in the above-captioned matter is hereby reversed.

notice and costs of mail and posted notices in connection with the return of the claim and mail and posted notices of sale.